IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORDIS CORPORATION,         ) | |
|                                ) | |
|         Plaintiff,        ) | |
|                                ) | |
|   v.        ) | Civ. No. 03-027-SLR |
|                                ) | |
| BOSTON SCIENTIFIC       ) | |
| CORPORATION and SCIMED LIFE ) | |
| SYSTEMS, INC.,        ) | |
|                                ) | |
|         Defendants.        ) | |

**MEMORANDUM ORDER**

At Wilmington this 30th day of September 2009, having reviewed the material submitted by the parties[1] (D.I. 463-466, 468-69) related to the Federal Circuit's remand in this case[2] (D.I. 454), in order to determine what issues remain to be litigated, what limited discovery needs to be pursued in connection with said issues, and the pretrial and trial schedules;

IT IS ORDERED that, consistent with the liability phase of this litigation, Cordis' damages and willfulness claims for the Palmaz '762 and Gray '406 patents will be tried separately and before a different jury than BSC's damages and willfulness claims for

---

[1] Cordis Corporation ("Cordis") and Boston Scientific Corporation and Scimed Life Systems, Inc. (collectively, "BSC").

[2] *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319 (Fed. Cir. 2009).

the Jang '021 patent[3], with the pretrial issues being resolved as follows:

1. **Background.** Following liability trials in 2005 and an appeal, this case has returned on remand from a decision by the Federal Circuit affirming the judgments that: (a) BSC's Express and Taxus Express stents infringe valid claims of Cordis' Palmaz '762 patent; (b) BSC's Liberte stent infringes valid claims of Cordis' Palmaz '762 and Gray '406 patents; and (c) Cordis' Cypher and BX Velocity stents infringe a valid claim of BSC's Jang '021 patent. BSC's claims based on the Ding '536 patent have been dismissed based upon the Federal Circuit's conclusion that the patent is invalid as a matter of law. On remand, damages and willfulness on the three remaining patents need to be tried. Fact and expert discovery on damages and willfulness was completed in 2005, and the parties disclosed at that time their witnesses, exhibits and intended proofs, as reflected in the pretrial order.[4] Nevertheless, because of the passage of time and the change in economic circumstances, the parties disagree over both the scope of the discovery needed and the relief permitted.

2. **BSC's discovery plan.** Because Cordis seeks only to update discovery based on the parties' pretrial commitments, as reflected in the parties' expert reports, their May 2005 joint pretrial order and their stipulations of record, I devote most of this order to addressing BSC's contentions.

---

[3]Given the age of this case and the different discovery requests made by the parties, it may make sense to allow each of these trials to proceed as expeditiously as possible, on different schedules.

[4]The court severed the issues of damages and willfulness a week before the June 2005 pretrial conference and scheduled separate trials on liability in August 2005, one for the Palmaz and Gray patents, and one for the Jang and Ding patents.

a. **BSC's request for updated discovery on its pre-verdict reasonable royalties claim.** BSC asserts that "the fact that Cordis has not been able to develop and commercialize an alternative non-infringing stent is critical" and seeks to propound discovery "related to Cordis' ability to design a non-infringing alternative." (D.I. 466 at 8) As of the time expert discovery concluded in May 2005, Cordis had been using the same stent platform since 2000[5] and had filed nothing with the FDA seeking approval for a new drug-eluting stent based on any other platform. Therefore, even assuming that Cordis' use of the same commercial product since 2000 has any relevance to the ease with which Cordis could have developed a new design in 1999,[6] that fact was known in 2005 and could have been further developed then. I, therefore, decline to allow discovery on this topic.

b. **BSC's claim for pre-verdict lost profits.** Despite the fact that BSC did not seek lost profits damages before trial as to the Jang '021 patent,[7] BSC now claims that it is entitled to such on two grounds.

1.) In the first instance, BSC contends that a ruling I made in yet another case between these two parties, *Cordis Corp. v. Boston Scientific Corp.*, Civ. No. 08-779-SLR (D.I. 73), should be applied to the facts at bar. I disagree. The legal determination that a party can pursue a new cause of action based on new acts of

---

[5]The same platform in use today.

[6]When the hypothetical negotiation would have occurred and when Cordis arguably had a need for a new product.

[7]A lost profits theory of damages was neither identified nor pursued by BSC pretrial. Consequently, Cordis planned its trial strategy based on the value assigned pretrial to the Jang patent based on a reasonable royalty theory of damages. (D.I. 464)

infringement simply is not analogous to a determination of damages based on a cause of action that has been pursued to verdict. Even if it were, the unusual facts underlying my decision in the 08-779 case are inapposite to the facts at bar, as BSC well knows.

2.) BSC also bases its new claim for lost profits on the "law of the case." (D.I. 469 at 12)  The "law of the case" to which BSC refers is a seven-page memorandum order issued in this case on June 3, 2005 denying BSC's motion to preclude Cordis from presenting its lost profits theory of damages to the jury. (D.I. 335)  In that order, I determined that genuine issues of material fact existed as to Cordis' capacity to exploit demand; therefore, BSC's motion for summary judgment could not be granted. Without expending scarce resources to refute what BSC has labeled "unqualified legal determinations,"[8] suffice it to say that I do not consider, as binding, any analysis used to deny a motion for summary judgment based on a very particular record. This view of the law is consistent with Third Circuit precedent. *See, e.g., Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.,* 988 F.2d 414, 429-430 (3d Cir. 1993) (finding that the law of the case doctrine does not apply to a discussion in an opinion denying a motion for summary judgment, as the doctrine does not apply to dictum); *see also United Artists Theatre Circuit, Inc. v. Township of Warrington, PA,* 316 F.3d 392, 397 n.4 (3d Cir. 2003); *Southco, Inc. v. Kanebridge Corp.,* 324 F.3d 190, 194 (3d Cir. 2003).

c. **BSC's claim for post-verdict royalties.** BSC asserts that, if it is

---

[8] Among the "unqualified legal determinations" cited by BSC is a sentence contained in a footnote describing a general Federal Circuit holding. (*See* D.I. 335 at 4 n.2)

denied the opportunity to pursue lost profits damages, it "should be permitted to seek discovery and claim enhanced post-verdict royalties." (D.I. 466 at 12) The Federal Circuit has recognized the power of a district court to impose an ongoing royalty in lieu of entry of a permanent injunction.[9] *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314-1315 (Fed. Cir. 2007) ("*Paice*"); *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008) ("*Amado*"). When a post-verdict ongoing royalty is imposed in lieu of an injunction, "the assessment of damages for infringements taking place after the injunction should take into account the change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability." *Amado*, 517 F.3d at 1362. *Accord, Boston Scientific Corp. v. Johnson & Johnson*, 2009 WL 975424 *5 (N.D. Cal. April 9, 2009) ("the California litigation").

      d. The case at bar admittedly is in a different posture than the above cases, in that liability has been established but damages have not. The question remains how to accommodate the legal principles recognized by the Federal Circuit above within the context of this litigation. I propose to do so as follows:

      1.) The Federal Circuit has determined that Cordis' Cypher and BX Velocity stents infringe BSC's Jang '021 patent. Despite Cordis' continuous sales of these products, and consistent with my understanding of the record and of industry convention,[10] a permanent injunction is not being sought.

---

[9] If the parties are unwilling to negotiate a license amongst themselves regarding future use of a patented invention.

[10] As noted by Judge Illston in the California litigation, 2009 WL 975424 *3 (N.D. Cal. April 9, 2009), "[in] the stent industry, there has not been an injunction" and the competitors have generally agreed to keep all products on the market.

5

2.) The Federal Circuit's decisions in *Paice* and *Amado* are instructive on many levels. Significantly, in *Amado*, the Federal Circuit reiterated its long-standing recognition that

> [d]istrict courts manage hundreds of civil and criminal cases at any given time. For this reason, they are afforded broad discretion to control and manage their dockets, including the authority to decide the order in which they hear and decide issues pending before them. *E.g., Univ. of W. Va. Bd. of Trustees v. Vanvoorhies*, 278 F.3d 1288, 1295 (Fed. Cir. 2002) ("This Court defers to the judgment of the trial court on matters closely associated with the standard functions of the adjudicative process, as long as that judgment is not an abuse of the trial court's discretion."); *Beatrice Foods Co. v. New Eng. Printing & Lithographing Co.*, 899 F.2d 1171, 1177 (Fed. Cir. 1990) ("A trial court has broad discretionary authority in managing the litigation before it . . . .").

517 F.3d at 1358.[11] With respect to the issue at bar, the Federal Circuit in *Paice* confirmed that, where a permanent injunction is not warranted and the parties cannot (or will not) come to agreement regarding future use of a patented invention, a district court may "step in to assess a reasonable royalty in light of the ongoing infringement" and "may take additional evidence if necessary to account for any additional economic factors arising out of the imposition of an ongoing royalty." 504 F.3d at 1315.[12]

3.) As to the scope of discovery and the ultimate basis for the award of an ongoing royalty, I concur in Judge Illston's analysis in the California

---

[11]The Federal Circuit's customary deference to district courts is in marked contrast to some appellate courts and is much appreciated by district court judges.

[12]In *Paice*, the jury found infringement and awarded plaintiff a reasonable royalty. Plaintiff thereafter moved for a permanent injunction. In denying the motion for injunctive relief, the district court determined that, "rather than leaving the parties to their own devices with respect to any future acts of infringement," the imposition of an "ongoing royalty" was appropriate. 504 F.3d at 1303.

6

litigation, that

> trial courts should not rely on jury verdicts on reasonable royalties for past infringement because of the "fundamental difference" between pre- and post-verdict damages. [*Amado*,] 517 F.3d at 1361. Accordingly, the court . . . must assume that the jury finding of liability in this case would have strengthened Cordis' bargaining position had the parties negotiated a license after the jury verdict. This strengthened bargaining position would have resulted from the parties' knowledge that Cordis could have forced BSC's infringing product off the market for a limited period of time (creating what the parties refer to as a hold up effect).

2009 WL 975424 at *5. Although Judge Illston used the *Georgia-Pacific* factors to determine a reasonable post-verdict royalty, she considered whether certain factors should be weighed differently in the context of a post-verdict award. *Id.*

    4.) I conclude that BSC may conduct limited discovery on Cordis' post-verdict conduct in order to present evidence to the court in support of a post-verdict ongoing royalty. Because the imposition of an ongoing royalty is in lieu of the imposition of an injunction and is discretionary, I find that the relief requested is equitable in nature and not subject to the Seventh Amendment right to a jury trial. *E.g., Paice*, 504 F.3d at 1315-16.

    e. **BSC's request for updated discovery on Cordis' claim for lost profits.** The matter of Cordis' capacity to supply market demand has been hotly contested in this litigation. BSC may conduct limited discovery in this regard. I decline to entertain a summary judgment motion on the subject, however, given the time and resource constraints facing the court, the age of the case, and the assumption we all have been working under, that these issues would be tried as soon as liability was

finally determined by the Federal Circuit.

f. **BSC's contention as to Cordis' lost profits claim.** BSC asserts that Cordis is not entitled to claim any lost profits, now that it has been determined to infringe the Jang '021 patent. In support of its assertion, it recites a general proposition on damages from an even more general source.[13] I conclude that BSC's argument in this regard has neither a basis in law nor in fact, given that Cordis' Cypher stent is still on the market (as per the above discussion). *E.g., Medtronic Vascular Inc. v. Abbott Cardiovascular Systems, Inc.*, 2009 WL 1421632 *4-5 (N.D. Cal. May 15, 2009).

g. **BSC's request for discovery of profits made by Cordis related entities.** By this request, BSC seeks to renege on its pretrial stipulation entered into with Cordis whereby the parties agreed to forego such discovery and further agreed that the lost profits recoverable by both BSC and Cordis could include the lost profits of their respective affiliates. (D.I. 213) Again, there is no basis in law[14] or fact that justifies allowing BSC to withdraw from its agreement.

h. In sum, I decline to allow BSC to take undue advantage of my decision to bifurcate damages by its abrogating prior litigation strategies and commitments. The

---

[13]"Lost profits 'may not be considered as an element of damages where the business from which they would have resulted was, or would have been, conducted in violation of the law.'" 25 C.J.S. DAMAGES § 59 (2009).

[14]In *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008), the Federal Circuit reaffirmed the legal proposition that a parent is entitled to the profits associated with the lost sales of its subsidiary only when such profits "actually do flow inexorably up to the parent." *Id.* at 1367. In this case, the parties expressly agreed on a set of facts sufficient to permit the parent/patent owner to collect "damages on behalf of subsidiaries and affiliates" (D.I. 213), thus avoiding the need for discovery and proof about this issue. The law has not changed or even been clarified, contrary to BSC's assertions.

ongoing royalty will take into account post-verdict conduct and is the appropriate remedy for a party in BSC's position.

                                                    /s/ Sue L. Robinson
                                                    United States District Judge