IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORDIS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 03-27-SLR |
| | ) |
| BOSTON SCIENTIFIC | ) |
| CORPORATION and BOSTON | ) |
| SCIENTIFIC SCIMED, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 28th day of January, 2010, having conferred with counsel regarding multiple pretrial evidentiary issues;

IT IS ORDERED that:

1. **Willfulness**. The parties dispute the appropriate scope of the Federal Circuit's decision in *In re Seagate Techonology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc), as it relates to their proposed evidence at bar. The Federal Circuit in *Seagate* revisited its jurisprudence on the doctrine of willfulness in the context of a discovery dispute, to wit, the question of whether "waiver resulting from advice of counsel and word product defenses extend to trial counsel." *Id.* at 1370. The Court started its analysis by exploring the definition of the term "willful," as used generally in the civil context, noting in this regard that the "'standard civil usage' of 'willful' includes reckless behavior." *Id.* (citing *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2209

(2007)). The Federal Circuit concluded that,

> to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. . . . If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer. We leave it to future cases to further develop the application of this standard.

Seagate, 497 F.3d at 1371.

2. Having announced the general standard, the Federal Circuit resolved the pending discovery dispute based on the following reasoning: "[I]n ordinary circumstances, willfulness will depend on an infringer's **prelitigation** conduct [for,] when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement." Id. at 1374 (emphasis added). "Because willful infringement in the main must find its basis in **prelitigation** conduct, communications of trial counsel counsel have little, if any, relevance warranting their disclosure." Id. (emphasis added). Moreover, the opinions of counsel received after suit was commenced "appear to be of similarly marginal value," as "reliance on the opinions **after litigation** was commenced will likely be **of little significance**." Id. (emphasis added).

3. Accepting the Federal Circuit's invitation to "further develop the application of [the] standard" announced in Seagate, the parties at bar focus on one phrase in the Court's decision, highlighted below: "If this threshold objective standard is satisfied, the patentee must also demonstrate that **this objectively-defined risk (determined by the record developed in the infringement proceeding)** was either known or so obvious

2

that it should have been known to the accused infringer." *Id.* at 1371 (emphasis added). Counsel's interpretation of what this "record" encompasses is as imaginative as it is variable. Indeed, it has become the new mantra for requests to admit such "objective" evidence as expert opinions and court decisions. For instance, in requesting the admission of (or at least permission to refer to) the preliminary injunction decisions issued in this case, counsel has argued, "what could be more objective than three federal judges on the Court of Appeals and one federal judge on the district court looking at the evidence neutrally, dispassionately, and saying[, e.g.,] you're likely to succeed?" (Transcript from January 20, 2010 pretrial at 15)

4. Before addressing the specific evidentiary disputes raised by the parties, I will take this opportunity to share my thoughts on the application of the *Seagate* holding to a trial setting.

    a. It cannot be emphasized enough that the litigation process is a complicated one, comprising multiple steps and moved forward by multiple decisions, ranging from resolving a discovery dispute to a case-dispositive motion. Consequently, I am very uncomfortable with characterizing administrative and court decisions as "objective evidence" for presentation to a jury. As recognized by counsel, a jury is going to give such evidence great weight, even when the procedural and substantive bases for most such decisions will not be apparent to the jury. This strikes me either as the kind of evidence better suited for review by a court[1] or as eliciting the kind of hindsight

---

[1] Although willfulness has been characterized as a matter of fact for a jury to determine (the court being charged with awarding, or not, enhanced damages based on a jury's determination), the paradigm suggested by counsel is more consistent with willfulness being an issue of law.

3

review that is so strenuously discouraged in other aspects of patent law. *See KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007). Therefore, consistent with the reasoning of the *Seagate* decision as a whole (and its emphasis on prelitigation conduct), generally only evidence regarding the prelitigation landscape of the dispute will be admitted.

    b. Even in this regard, the proposed evidence must pass muster under Fed. R. Civ. P. 403. In other words, while some evidence may reflect an objectively high likelihood that certain activities constitute infringement of a valid patent, such evidence may still be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

    c. To the extent that probative evidence runs afoul of Rule 403, the court may ameliorate the danger of unfair prejudice by either a limiting instruction or by characterizing the evidence in a more neutral way than an advocate would.

  5. With this analytical framework in place, the parties' evidentiary disputes are resolved as follows:

    a. The parties' stipulation expanding the trial record to include "the entire record in the above-captioned action" and "[a]ll decisions by this court or by the Federal Circuit" in other cases (D.I. 523) is denied. I am not inclined to clutter the trial record with such voluminous materials, most of which will not be relevant to this proceeding and which are a matter of public record in any event.

    b. As discussed at the pretrial conference, I propose to summarize the procedural history of this case by amending the third paragraph in "The Parties and Issues" section of the preliminary jury instructions, as follows:

> Under the patent laws of the United States, patent infringement occurs when the infringing party makes, uses, sells, or offers to sell in the United States a product meeting all requirements of a claim of a United States patent. In this litigation, the court made a preliminary finding of infringement against defendants, a finding that was affirmed on appeal. The accused devices were not taken off the market, however, and the case proceeded to trial based on the court's finding, upon a more developed record, that genuine issues of material fact precluded entry of a summary judgment as to infringement. A jury ultimately determined that Boston Scientific's Express, Taxus Express, Express Biliary and Liberte stents infringed claims 1 and 23 of the '762 patent, and that Boston Scientific's Liberte stent infringed claim 2 of the '406 patent.

c. I agree with Cordis that the state of the industry in 2004 (BSC's launch date) is highly probative. However, consistent with Rule 403, the evidence relating to the NIR litigation will be circumscribed.[2] I will address this issue more specifically with counsel prior to trial.

d. No statements issued in any re-examinations proceedings shall be admitted.

e. As stated at the pretrial conference, Cordis' economic analysis directed at the proposition that "it was economically rational" for BSC to infringe, shall not be admitted absent further discussion, based on the trial record as it develops.

6. **Damages.** There are several pending motions relating to damages, which shall be addressed *seriatim*.

a. **Cordis' motion for reconsideration** of one aspect of the September 30, 2009 memorandum order (D.I. 485) is denied, but I will clarify my order as follows.

---

[2] I note in this regard, however, that if BSC were to deny knowledge of the state of the industry in 2004, the NIR litigation history may be admitted on cross or in a rebuttal case.

Cordis argues that the order "appears to contemplate the imposition of 'an ongoing royalty in lieu of entry of a permanent injunction' retroactively for past sales, as well as prospectively for future sales." (D.I. 485) That is not what I intended. As recognized in the newly issued "Compensatory Damages Issues in Patent Infringement Cases: A Handbook For Federal District Court Judges" ("the Handbook"), there is a "relative paucity of guidance" in this area of the law. (D.I. 543, ex. 1 at 31) I agree with Cordis that the "ongoing royalty" form of relief has been characterized as an alternative to the imposition of a permanent injunction and injunctive relief generally is prospective in nature. (See id. at 30) Based on this reasoning, Cordis argues that the formula for assessing an ongoing royalty[3] should be confined to the ongoing royalty phase of this case. The problem with this analysis under the circumstances at bar is that, in a market where no injunctions have been entered against infringing products and where damages were bifurcated pending appeal, a party like BSC will be unduly prejudiced if it cannot include evidence of the change in circumstances post-verdict; i.e., for the four-year period between the jury verdict and the damages trial. As I see it, therefore, although I agree that an "ongoing royalty" determination should be made by the court and apply only to future infringing sales, I believe I have the authority to admit any relevant evidence in the damages jury trial with respect to the hypothetical negotiation, including

---

[3]The assessment of damages for infringement taking place after a verdict "should take into account the change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008).

6

that related to the parties' change in economic circumstances.[4]

b. **Entire market value.** BSC argues, in its motion to preclude the damages calculations of Creighton G. Hoffman, that Cordis has not established its right to recover lost profits because it has not proven that "'the patented technology serves as the basis for customer demand.'" (D.I. 543 at 2, citing the Handbook, ex. 1 at 19) According to BSC, "Mr. Hoffman did not present any evidence demonstrating that the bare-metal stent component - the only component of a drug-eluting stent that the asserted claims of the '762 patent cover - formed the basis of demand for drug-eluting stents, as required by the entire market value rule." (D.I. 502 at 9) The fallacy with this contention, as argued by Cordis, is that the infringing bare-metal stents were the only delivery vehicles for the drug. This certainly is not a case where the patented feature is optional or unimportant; literally, without the patented feature, BSC would not have a product to sell. Without further discussion, BSC's motion (D.I. 501) is denied. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995).

c. **Lost profits.** BSC contends that Cordis is not entitled to lost profits based on the fact that Cordis has been found to infringe the Jang '021 patent. Despite the fact that I rejected this contention in my September 30, 2009 order, BSC filed a motion for summary judgment on the same issue. That motion (D.I. 514) is denied. Moreover, because BSC has never made any effort to stop the sales of the Cypher stent by seeking an injunction, the Jang verdict is not relevant to, nor shall it be mentioned in

---

[4]In this regard, I conclude that Mr. Sims, BSC's damages expert, appropriately identifies in his supplemental report the events that have transpired since the verdict, without changing his range of values.

7

the '762 damages case.[5]

       d. **Royalty rates.** Consistent with my past practice, the royalty rates for litigation settlement agreements will not be admitted.

      7. **Copying.** BSC did not offer any evidence of copying in the liability phase of the trial. That does not itself preclude BSC from offering such evidence in the willfulness/damages trial. However, because it is not clear to the court whether there is bona fide evidence of copying, if BSC wants to pursue this theory, it shall submit for my review and that of Cordis a proffer of the evidence upon which it intends to rely,, on or before **February 3, 2010**.

                                                 _____
                                                   United States District Judge

---

[5] I further note that Cordis' continuing infringement of the Jang'021 patent has no relevance to the issue of BSC's willful conduct vis a vis the '762 patent.